| | |
|---|---|
| **DISTRICT COURT, EAGLE COUNTY, STATE OF COLORADO**<br><br>Physical Address: 885 Chambers Ave., Eagle, CO 81631<br>Mailing Address: P.O. Box 597, Eagle, CO 81631<br>Tel. No.: (970) 328-6373 | DATE FILED<br>July 12, 2026 9:51 AM<br>FILING ID: 9FA4A118C7A0D<br>CASE NUMBER: 2026CV30144 |
| Plaintiffs: **HIDDEN TABLE GAMES LLC**, a Colorado limited liability company, and **228 BROADWAY, LLC**, a Colorado limited liability company,<br><br>**v.**<br><br>Defendants: **OHIO SECURITY INSURANCE COMPANY**, a New Hampshire insurance company, and **LIBERTY MUTUAL INSURANCE COMPANY**, a Massachusetts insurance company. | **▲ COURT USE ONLY ▲** |
| Counsel for Plaintiffs:<br>Michael G. Brownlee, #40543<br>**BROWNLEE & ASSOCIATES, LLC**<br>216 Main Street, C100<br>PO Box 268<br>Edwards, CO 81632<br>Tel. No.: (970) 855-0185<br>Fax No.: (970) 360-1049<br>Email: michael@brownleelawllc.com | Case Number: ______________<br><br>Div.: Ctrm: |
| **COMPLAINT AND JURY DEMAND** | |

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW Plaintiffs, HIDDEN TABLE GAMES LLC, a Colorado limited liability company and 228 BROADWAY, LLC, a Colorado limited liability company, by and through their undersigned counsel, Michael G. Brownlee of BROWNLEE & ASSOCIATES, LLC, and file their *Complaint and Jury Demand* (the "Complaint") against Defendants, OHIO SECURITY INSURANCE COMPANY, a New Hampshire insurance company and LIBERTY MUTUAL INSURANCE COMPANY, a Massachusetts insurance company, and would show this Honorable Court the following:

**EXHIBIT A**

## A. PARTIES

1. Plaintiff, HIDDEN TABLE GAMES LLC ("Plaintiff" or "HTG"), is a Colorado limited liability company with a mailing address of PO Box 375, Silverthorne, CO 80498 who at all times relevant hereto has been in good standing with the COLORADO SECRETARY OF STATE ("CSOS"). At all relevant times, HTG operated a collectible card game and hobby store at the real property at issue in this matter located at 228 Broadway St, Eagle, CO 81631 (the "Property"), which HTG occupies pursuant to a written lease. HTG is a named insured under the policy of insurance described below. See, infra, ¶9.

2. Plaintiff 228 BROADWAY, LLC ("228 Broadway") is a Colorado limited liability company with a mailing address of PO Box 1975, Eagle, CO 81631, which at all relevant times has been in good standing with the CSOS. At all relevant times, 228 Broadway owned the Property and leased portions of the Property to HTG and other commercial tenants. HTG and 228 Broadway are referred to collectively herein as "Plaintiffs

3. Defendant OHIO SECURITY INSURANCE COMPANY ("OSIC") is a New Hampshire insurance company with a principal office street address of 100 Liberty Way, Dover, NH, 03820. OSIC is a member of the Liberty Mutual group of insurance companies. OSIC issued and underwrote the policy of insurance described below. See, infra, ¶9. According to the CSOS, at all relevant times, OSIC was authorized to transact insurance business in Colorado, and its registered agent for service of process is the CORPORATION SERVICE COMPANY, 1900 W. Littleton Boulevard, Littleton, Colorado 80120.

4. Defendant, LIBERTY MUTUAL INSURANCE COMPANY, is a Massachusetts insurance company ("Liberty"), with a principal office street and mailing address of 175 Berkeley St., Boston, MA 02116. According to the CSOS, at all relevant times hereto, Liberty was registered as a foreign corporation in Colorado and its registered agent for service in Colorado is the CORPORATION SERVICE COMPANY with an address of 1900 W. Littleton Boulevard, Littleton, Colorado 80120. At all relevant times, Liberty Mutual adjusted, directed, and controlled the handling of Plaintiffs' insurance claims on OSIC's behalf and acted as OSIC's agent with respect to the adjustment of those claims. Liberty Mutual's adjusters corresponded with Plaintiffs on Liberty Mutual letterhead and signed the coverage correspondence described below on behalf of "Liberty Mutual Insurance Company." OSIC and Liberty Mutual are referred to collectively as "Liberty" or "Defendants."

## B. JURISDICTION AND VENUE

5. This Court has subject-matter jurisdiction over this action pursuant to Colo. Const. art. VI, § 9, because district courts are courts of general jurisdiction and the amount in controversy exceeds the jurisdictional limit of the county courts. This Court has personal jurisdiction over Defendants pursuant to C.R.S. § 13-1-124(1) because Defendants transact business within Colorado and contracted to insure property located within Colorado at the time of contracting.



EXHIBIT A

6. Venue is proper in Eagle County, pursuant to C.R.C.P. 98(c) because the insured property is located at 228 Broadway St, Eagle, Colorado 81631, where the loss occurred and where a substantial part of the events giving rise to Plaintiffs' claims took place.

## C. CONDITIONS PRECEDENT AND RESPONDEAT SUPERIOR

7. All conditions precedent have occurred or been performed for this lawsuit.

8. Whenever it is alleged that a particular Defendant did any act or thing, it is meant that such Defendant or its agents, officers, servants, employees, or representatives did such act or thing. Such acts or conduct were also done with the full authorization or ratification of said Defendant or done in the normal routine, course and scope of the agency or employment of said Defendant or its agents, officers, servants, employees, or representatives.

## D. STATEMENT OF FACTS

9. OSIC issued Policy Number BKS (25) 66 98 02 96 (the "Policy"), an all-risk commercial package policy, covering the Property for the policy period June 10, 2024 to June 10, 2025. The named insureds under the Policy are HTG and 228 Broadway. Liberty drafted the Policy and all of its forms and endorsements. 228 Broadway is a named insured under the Policy pursuant to the Named Insured Endorsement, Form DS 88 04, which states that the complete Named Insured under the Policy is "HIDDEN TABLE GAMES LLC / 228 BROADWAY, LLC."

10. The Policy's Commercial Property coverage includes Building coverage on a replacement cost basis with a $750,000 limit and a $1,000 deductible, and Business Personal Property coverage, among other coverages. Through the Custom Protector Endorsement, Form CP 90 00 01 15, the Policy also provides, among other things: (a) a Business Income Coverage Extension paying up to $25,000 per occurrence for actual loss of business income sustained due to the necessary suspension of operations during the period of restoration; and (b) Ordinance or Law Additional Coverage, including Increased Cost of Construction coverage paying up to the lesser of 25% of the Building Limit of Insurance or $100,000 per occurrence for increased costs of repair required by the enforcement of building codes, ordinances, or laws.

11. On or about July 12, 2024, a plumbing line failed at the Property and water flooded the Property's cellar, causing direct physical loss and damage, including washout of the soil foundation walls. When a plumber shut off water to the building to make repairs, a second leak began on the supply line in the front cellar, and the front cellar filled with water to a depth of approximately seven feet.

12. Plaintiffs gave Liberty notice of the loss on July 13, 2024. Liberty acknowledged the claim, assigned it claim number 24211069 (the "Claim"), and assigned adjuster

Cristina Franco, who was later replaced by General Adjuster Keegan Crowther, to direct and manage the adjustment of the Claim on Defendants' behalf. Liberty's claim correspondence stated on its face that the Policy was "underwritten by: Ohio Security Insurance Company."

13. On or about July 18, 2024, the Town of Eagle's water main serving the Property broke, causing additional water intrusion and damage to the Property's cellar. Plaintiffs promptly notified Liberty of this loss. On or about August 16, 2024, in the course of repairing the main, the Town's contractor removed a section of the Property's foundation wall and backfilled the excavation with loose gravel, causing further damage to the Property, including bowing of the wood wall in the front cellar.

14. Liberty inspected the Property on July 19, 2024, with knowledge of both water events, and thereafter investigated, adjusted, and paid amounts attributable to both events under the single Claim number 24211069. Among other things, on October 22, 2024, Liberty paid $7,134.39 to Disaster Restoration Services for water mitigation arising from the July 18, 2024 loss, under Claim 24211069.

15. Liberty retained SDII GLOBAL, LLC ("SDII"), an engineering firm, which inspected the Property on September 24, 2024 and issued a Foundation Damage Assessment dated October 7, 2024. On November 24, 2024, SDII issued a Cost to Repair Analysis estimating repair costs of only $8,726.50. On December 2, 2024, Liberty issued an estimate of $8,759.09 (replacement cost value) and on December 5, 2024 paid $7,759.09 after application of the deductible.

16. Between October and December 2024, Plaintiffs' public adjuster repeatedly requested that Liberty provide its estimate of the loss. On or about December 4, 2024, while the foundation damage remained unrepaired, Liberty advised that the Claim was being closed.

17. On July 25, 2024, ASPEN FOUNDATION REPAIRS LLC ("AFR") inspected the Property and estimated the cost to repair and replace the damaged foundation at $322,400. On January 15, 2025, Plaintiffs' public adjuster submitted to Liberty a detailed Xactimate estimate of the loss together with the AFR bid. Liberty acknowledged receipt on January 21, 2025 and assigned its repair vendor, PAUL DAVIS RESTORATION, which was unable to write a bid for the foundation work. On February 20, 2025, Liberty escalated the Claim to its Large Loss unit, citing the amount of Plaintiffs' estimate.

18. After Plaintiffs' public adjuster challenged the adequacy of Liberty's estimate, Liberty re-inspected the Property on March 10, 2025, accompanied by its retained consultants from SDII and MKA INTERNATIONAL ("MKA"). SDII issued an addendum letter dated April 14, 2025. On April 24, 2025, Liberty issued a revised estimate prepared by MKA of $15,851.92 — nearly double Liberty's December 2024 estimate for the same damage.

19. On April 30, 2025, Liberty issued a coverage position letter partially denying the Claim. Among other things, Liberty: (a) rejected the AFR estimate on the ground that it was not



EXHIBIT A

for a foundation of "like, kind, or quality" because portions of the Property's foundation walls "were made of dirt prior to the loss"; (b) took the position that the July 18, 2024 water main break and the Town's August 16, 2024 foundation damage were "two occurrences" separate from the July 12, 2024 loss; (c) stated that if Plaintiffs wished to recover for the second event, "a new claim will need to be filed," and that a separate deductible would apply; and, (d) quoted the Policy's two-year suit limitation provision.

20. The Policy's notice provisions required Plaintiffs to give Liberty prompt notice of loss or damage, which Plaintiffs did for both the July 12 and July 18, 2024 events. No Policy provision requires an insured to "file a new claim" or obtain a second claim number as a condition of coverage. Having received prompt notice of the July 18, 2024 loss, and having inspected, adjusted, and paid mitigation costs for that loss under Claim 24211069 for more than nine months, Liberty nevertheless refused to issue any coverage determination or pay any repair costs for the July 18, 2024 occurrence unless Plaintiffs re-filed it as a "new claim."

21. The damage to the Property's foundation cannot be repaired in a manner compliant with applicable building codes and sound construction practice by restoring exposed dirt foundation walls to their pre-loss condition. Code-compliant repair requires the scope and methods reflected in the AFR estimate, or a comparable scope. Although the Policy's Ordinance or Law Additional Coverage covers increased costs of code-compliant repair, Liberty never adjusted or paid any benefit under that coverage, despite itself quoting that coverage to Plaintiffs in correspondence.

22. On May 6, 2025, Liberty issued a final actual cash value payment of $6,844.75. In total, Defendants have paid $27,846.62 on the Claim, all attributable to building damage and mitigation: $6,108.39 (August 7, 2024, to ServPro), $7,134.39 (October 22, 2024, to Disaster Restoration Services), $7,759.09 (December 5, 2024), and $6,844.75 (May 6, 2025). Defendants have paid nothing for foundation repair beyond their own consultants' limited scope, nothing under the Ordinance or Law coverage, and nothing for any time element loss.

23. Liberty acknowledged that the Policy provides Business Income coverage and retained MKA to assess the period of restoration. The damage and the suspension of operations at the Property caused Plaintiffs time element losses, including lost rents from the Property's commercial tenants and lost business income of HTG.

24. On June 4, 2025, barely a month after its partial denial, Liberty wrote that it would "inactivate" the Claim file within 14 days if it did not hear from Plaintiffs. Plaintiffs' counsel responded on June 16, 2025, demanding that the file remain open. Liberty sent a second inactivation letter dated July 18, 2025; Plaintiffs' counsel again responded on August 15, 2025, advising that Plaintiffs were assembling their claim documentation. On September 30, 2025, Liberty inactivated the Claim file notwithstanding the parties' unresolved disputes.



**EXHIBIT A**

25. On January 7, 2026, Plaintiffs' public adjuster submitted a lost rents calculation supporting Plaintiffs' time element claim, spanning the period of restoration for both water events. On January 12, 2026, Liberty responded with a reservation of rights letter stating that it was "continuing to investigate" the Claim — eighteen months after the loss — while quoting, in the same letter, the Policy's two-year suit limitation provision. Liberty has never paid any time element benefit.

26. On March 2, 2026, Liberty transmitted a period of restoration analysis prepared by MKA concluding that the approved repairs would require only four days, approved a repair scope limited to the single tenant space occupied by Jose Angel Montes, reiterated its position that the damage to the front cellar was a "separate event," and offered that, if Plaintiffs wished, Liberty would file the new claim for the separate event itself. Liberty's offer to file the claim itself confirms that Liberty possessed all of the information necessary to adjust the July 18, 2024 occurrence and that its refusal to do so rested on a formality found nowhere in the Policy. On March 16, 2026, Plaintiffs' public adjuster disputed the four-day period of restoration, and that dispute remains unresolved.

27. On July 1, 2026, Liberty reaffirmed its April 30, 2025 coverage position. On July 9, 2026, Plaintiffs requested that Liberty agree to toll the Policy's suit limitation period for 60 days so that the parties could continue to exchange information. On July 10, 2026, two days before expiration of the suit limitation period Liberty had repeatedly invoked, Liberty declined, notwithstanding its January 12, 2026 representation that it was continuing to investigate the Claim.

28. Plaintiffs plead in the alternative that the July 12, 2024 and July 18, 2024 water events and the Town's ensuing August 16, 2024 foundation damage constitute a single loss, as Plaintiffs contend, or two occurrences, as Liberty contends. Under either characterization, Defendants received prompt notice of all of the damage, adjusted all of the damage under Claim 24211069, and have failed to pay the covered benefits owed.

29. Defendant's bad faith conduct in this matter includes, but is not limited to, conducting an inadequate initial investigation and issuing a December 2024 estimate that Liberty's own consultants nearly doubled four months later; delaying nearly five months between first notice of loss and any estimate of the building damage; failing to pay undisputed benefits promptly as they were ascertained; refusing to adjust or pay the July 18, 2024 occurrence after receiving prompt notice of it, on the basis of a "new claim" formality found nowhere in the Policy; misrepresenting to Plaintiffs that the filing of a new claim was a condition of coverage, while later offering to file that claim itself; failing to adjust or pay the Ordinance or Law coverage and the acknowledged Business Income coverage; repeatedly threatening to inactivate, and then inactivating, the Claim file while the parties' disputes remained unresolved; representing in January 2026 that it was "continuing to investigate" while simultaneously and repeatedly invoking the Policy's suit limitation provision; and refusing Plaintiffs' request for a tolling agreement two days before that limitation period expired. Further Defendants unreasonably delay, inadequate, unreasonable, and improper investigation of Plaintiff's insurance claims; their "low-balling" of Plaintiff's insurance



EXHIBIT A

claims; multiple unreasonable and prolonged delays of Plaintiff's insurance claims; unsubstantiated and/or misleading statements to Plaintiffs regarding the coverages afforded under the Policy for the claims; misrepresentation of pertinent facts or insurance policy provisions relating to coverages at issue; unreasonable delegation of, dereliction of, and refusal to acknowledge or perform legal duties arising from the Policy; failure to acknowledge and act reasonably promptly upon communications with respect to Plaintiff's claims arising under the insurance Policy; failure to adopt and implement reasonable standards for the prompt investigation of claims arising under Plaintiff's insurance Policy; failure to review or otherwise evaluate the reasonableness of the costs of repairs prepared by Plaintiff; failure to attempt in good faith to effectuate prompt, fair, and equitable settlements of Plaintiff's claims in which liability had become reasonably clear; and, failure to render any definitive decision whatsoever (refusal or denial) within the limitations period in the Policy, which has forced Plaintiff to pursue litigation to recover for legitimate claims. These actions were all unreasonable and done in bad faith. These actions also constitute breaches of the express duties set forth in the insurance Policy, as well as the implied contractual duties of good faith and fair dealing that Defendants owed to Plaintiff.

30. As a direct and proximate result of Defendants' multiple breaches of contract and bad faith conduct, Plaintiff has incurred damages, injuries, and losses in an amount to be proven at trial

## E. CLAIMS FOR RELIEF

### First Claim for Relief
### (Breach of Contract — Against Defendant OSIC)

31. Plaintiff incorporates by reference the allegations above as if repeated verbatim herein.

32. As set forth above, Plaintiffs and OSIC entered into a valid, binding, and enforceable contract of insurance, the Policy, covering the losses alleged herein. Plaintiffs are named insureds under the Policy.

33. Plaintiffs fully complied with all the provisions of the Policy, including without limitation, paying premiums in a timely fashion and complying with all provisions governing claims and loss. Alternatively, such conditions precedent have been waived or are excused.

34. OSIC breached the Policy by failing and refusing to pay the full amount of covered benefits owed for the direct physical loss and damage to the Property arising from the July 12, 2024 and July 18, 2024 water losses, including without limitation the cost to repair the Property's foundation in a code-compliant manner, benefits owed under the Policy's Ordinance or Law Additional Coverage, and time element benefits owed under the Policy's Business Income coverage. Whether the water losses are treated as a single loss or as two occurrences, OSIC received prompt notice of both, adjusted both under Claim 24211069, and failed to pay the covered benefits owed for either.



EXHIBIT A

35. OSIC's delay and denial of Plaintiffs' claims constitutes a breach of the insurance Policy and is a breach of Plaintiffs' reasonable expectations concerning the coverage it would receive under its Policy.

36. OSIC's (1) failure to conduct a reasonable investigation, (2) failure to evaluate the total loss, and (3) failure to pay covered Policy benefits constitute breaches of the insurance Policy and are breaches of Plaintiffs' reasonable expectations concerning the coverage it would receive under the Policy.

37. OSIC chose to deny contractual benefits and failed to pay contractual benefits owed to Plaintiffs under the Policy, despite its repeated requests to OSIC for the payment of the covered benefits.

38. OSIC refused to provide the benefits contracted for by Plaintiffs thereby denying Plaintiffs the benefit of the bargain, breaching the insurance Policy in doing so.

39. As a direct, immediate, and proximate result of OSIC's breaches of contract, Plaintiffs have suffered injuries, damages, and losses in an amount to be proven at trial.

**Second Claim for Relief**
**(Common Law Insurance Bad Faith — Against All Defendants)**

40. Plaintiffs incorporate by reference the allegations above as if repeated verbatim herein for this cause of action for common law insurance bad faith.

41. OSIC issued the Policy to Plaintiffs, and Defendants jointly directed and controlled the investigation and adjustment of Plaintiffs' claims. Plaintiffs paid premiums and otherwise performed its obligations under its insurance contract with Liberty.

42. On or about July 12, 2024, and July 18, 2024, water caused extensive damage to the Property during the Policy period. Plaintiffs timely notified Liberty of the damage caused by both events. Liberty inspected the Property with knowledge of both events, adjusted and paid amounts attributable to both events under Claim 24211069, and then refused to issue any coverage determination for the July 18, 2024 occurrence unless Plaintiffs re-filed it as a "new claim."

43. As an insurer, Liberty owed certain general duties to its insured, including the duty of good faith and fair dealing, the duty to timely and fully investigate Plaintiffs' water damage insurance claims, the duty to communicate with the insured, and the duty to attempt to reasonably settle said claims. See also C.R.S §10-3-1104(1)(h).

44. Defendants breached these duties owed to Plaintiffs by delaying or denying payment of covered benefits without a reasonable basis. Defendants acted with knowledge or in reckless disregard of the fact that their delay and/or denials of the claims were

unreasonable, in violation of C.R.S. § 10-3-1113(3). Defendants took these actions for their own benefit in violation of the duties owed to Plaintiffs.

45. As a direct and proximate result of Defendants' bad faith insurance practices, Plaintiffs suffered injuries, damages, and losses in an amount to be proven at trial.

**Third Claim for Relief**
**(Unreasonable Delay/Denial Under C.R.S §§ 10-3-1113(3), 1115,1116 — Against All Defendants)**

46. Plaintiffs incorporates by reference the allegations above as if repeated verbatim herein for this cause of action for Defendants' unreasonable delay and/or denial of Plaintiffs' insurance claim pursuant to C.R.S. § 10-3-1113(3), 1115, 1116.

47. Liberty entered into an insurance contract with Plaintiffs and issued a Policy that provided coverage for property damage to the Property for damage from water. Plaintiffs paid premiums and otherwise performed its obligations under its insurance contract with Liberty.

48. On or about July 12, 2024 and July 18, 2024, the water caused extensive damage to the Property and said damage occurred within the Policy period. Plaintiffs timely notified Liberty of the damage caused by both events. Liberty inspected the Property with knowledge of both events, adjusted and paid amounts attributable to both events under Claim 24211069, and then refused to issue any coverage determination for the July 18, 2024 occurrence unless Plaintiffs re-filed it as a "new claim."

49. Each Plaintiff is, and continues to be, a first-party claimant under C.R.S. § 10-3-1115(1)(b), owed benefits as a named insured under the Policy.. Accordingly, Liberty had a statutory duty not to unreasonably delay or deny authorizing payment of covered benefits to Plaintiff under C.R.S §10-3-1113(3). Under C.R.S §10-3-1115(2), Defendant's delay and/or denial is considered unreasonable if the insurer delayed or denied authorizing payment of a covered benefit without a reasonable basis for that action.

50. Defendant has delayed and/or denied the payment of covered benefits to Plaintiff without a reasonable basis.

51. The covered benefits Defendants unreasonably delayed or denied include, without limitation: the reasonable cost of code-compliant repair of the Property's foundation; benefits owed under the Policy's Ordinance or Law Additional Coverage; time element benefits, including lost rents and lost business income, under the Policy's Business Income coverage; and the amounts of Liberty's own revised April 24, 2025 estimate that were ascertainable, undisputed, and unpaid for months after Liberty's initial December 2024 estimate.



EXHIBIT A

52. As a direct and proximate result of Defendant's unreasonable delay and denial, Plaintiff has suffered injuries, damages, and losses in an amount to be proven at trial. Plaintiff is entitled to all remedies allowed by C.R.S §10-3-1113, §10-3-1115, and §10-3-1116, including two times the covered benefit, reasonable attorney's fees, prejudgment and post-judgment interest, and court costs.

## F. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that the Court enter judgment in their favor and against Defendants, jointly and severally, for: (a) all of Plaintiffs' actual, economic, compensatory, and consequential damages in an amount to be proven at trial; (b) two times the covered benefit pursuant to C.R.S. § 10-3-1116(1); (c) reasonable attorney fees and court costs pursuant to C.R.S. § 10-3-1116(1); (d) pre-judgment and post-judgment interest to the fullest extent permitted by law, including C.R.S. § 5-12-102; and, (e) such other and further relief as the Court deems just and proper.

**Plaintiffs demand a trial by jury as to all claims so triable and paid the requisite fee herewith.**

Dated this 12th day of July 2026

**BROWNLEE & ASSOCIATES, LLC**

By: *<u>/s/ Michael G. Brownlee</u>*
Michael G. Brownlee, #40543
216 Main St, C-100
PO Box 268
Edwards, CO 81632
Tel. No.: (970) 855-0185
Fax No.: (970) 360-1049
Email: michael@brownleelawllc.com

***Counsel for Plaintiffs***

**<u>Plaintiffs' Addresses</u>:** HIDDEN TABLE GAMES LLC, PO Box 375, Silverthorne, CO 80498;
228 BROADWAY, LLC, PO Box 1975, Eagle, CO 81631



EXHIBIT A